# IN THE FEDERAL DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JESSICA L. MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | JURY TRIAL DEMANDED |
| OFFICE OF THE ILLINOIS SECRETARY ) | |
| OF STATE ) | |
| ) | |
| ) | |
| Defendant ) | |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES, Plaintiff JESSICA L. MOORE ("Plaintiff"), by and through undersigned Counsel, brings this civil rights action against Defendant, OFFICE OF THE ILLINOIS SECRETARY OF STATE ("Defendant") for retaliation in violation of Title VII of the Civil Rights Act of 1964. In support of her claims, Plaintiff states as follows:

## JURISDICTION AND VENUE

1. Jurisdiction is proper under 28 U.S.C. § 1331 because this action arises under the laws of the United States. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, for retaliation.

2. The venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because the events giving rise to the claims occurred in this district.

3. On or about March 23, 2022, Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (hereafter "EEOC"). On or about April 12, 2022, Plaintiff received a Notice of Right to Sue from the EEOC, authorizing her to commence this lawsuit.

## PARTIES

4. Plaintiff resides in the Northern District of Illinois. She was an employee for Defendant from or around October 1, 2021 through March 4, 2022.

5. The Defendant is a state of Illinois municipal agency. Defendant provides public services through the state of Illinois related to vehicle registration, business licenses, and other related administrative matters. Defendant employed Plaintiff from on or about October 1, 2021, until Plaintiff's discharge on or about March 4, 2022.

## FACTUAL ALLEGATIONS

6. Plaintiff, a female, was hired as a security officer at Defendant on or about October 1, 2021. As part of Defendant's employment, her employment was covered under the union terms and conditions.

7. Plaintiff was assigned to the Secretary of State branch located at 9901 S. King Drive, Chicago, IL 60628, during the course of her employment with Defendant. From November 16, 2021 through December 31, 2021, on a temporary basis, Plaintiff was assigned to the branch location at 14434 S. Pulaski, Midlothian, IL 60445.

8. Plaintiff's supervisors were male during the course of her employment with Defendant. Plaintiff's male supervisors included the Secretary of State branch location's Lieutenant Eric Robinson, Doug O'Connor, branch supervisor, and Pete Piazza, regional supervisor.

9. From the onset of Plaintiff's employment, Mr. Robinson spoke to Plaintiff in a demeaning and disrespectful manner. On or around, October 2021, Mr. Robinson falsely accused Plaintiff of not notifying Mr. Robinson that Plaintiff is checking out for her break. Mr. Robinson was in Plaintiff's presence when Plaintiff checked out for her break.

10. In or around October 2021, Plaintiff called in sick to work. Defendant provided a doctor's note. Defendant rejected the doctor's note because the note was electronically signed by the doctor as opposed to a physical signature. Plaintiff was unaware of the electronic requirement because it is Plaintiff's understanding that Defendant accepted electronic doctor signatures for other employees.

11. In or around January 6, 2022, Plaintiff called the branch supervisor, Jeff Anders, to inform him that she was unable to work on the same particular day due to sickness. At this time, Plaintiff accrued paid sick leave for one full day's shift. Defendant requested documentation for proof of sickness. Defendant's daughter was sick with COVID, Plaintiff provided a copy of COVID results and a physician's note. It is Plaintiff's understanding, that under the Union handbook, Plaintiff is not required to provide proof of illness, such as COVID test results, however, Defendant required proof of such from Plaintiff. Additionally, Defendant requested Plaintiff provide a copy of any COVID test taken by a member of her family. Plaintiff is unaware of other employees that were required to provide a copy of their own or their family's COVID results similar to how Plaintiff provided her daughter's COVID results.

12. On or around January 26, 2022, Defendant conducted a three-month performance evaluation with Plaintiff. During the evaluation, Plaintiff was informed she had a "no-call no show" on her record, which was a reference to January 6, 2022, sick day mentioned in

paragraph 11. Plaintiff disputed this record because she informed Mr. Anders that she will not appear due to sickness. Additionally, Plaintiff complained about the October 2021 break incident with Mr. Robinson, Plaintiff was told that her concerns would be investigated and addressed, but Plaintiff is unaware of any investigation.

13. During Plaintiff's three-month evaluation on January 26, 2022, with Mr. O'Connor and regional supervisor Mr. Piazza, Mr. O'Connor informed Plaintiff of job performance issues. However, Plaintiff was not provided verbal warnings regarding performance and received written high praise from a branch manager, co-workers, and verbal praise from the Defendants' customers visiting the branch location.

14. Following her three-month evaluation, on January 26, 2022, Plaintiff filed an EEOC complaint against Defendant in which Plaintiff alleged discriminatory conduct against Defendant. The EEOC complaint was dismissed on or around March 14, 2022 and the Plaintiff is awaiting the Right to Sue letter from the EEOC.

15. Following her January 26, 2022, EEOC Complaint filing, in or around February 2022, Plaintiff was stationed outside the branch location in freezing temperatures. Plaintiff was forced to work outside because she did not feel comfortable around Mr. Robinson. Plaintiff wore a winter hat when she performed her job duties outside. Plaintiff wore this same hat from the end of January 2022 through the last week of February 2022. Sometime in the last week of February 2022, Mr. Robinson informed Plaintiff she cannot wear her winter hat per the directions of Mr. O'Connor. Plaintiff asked Mr. Robinson for the reason, and Mr. Robinson asserted it is because all hats need to be purchased from Defendant or obtain Defendant's logo to patch on the hat. A male security officer named Leon Barry had a logo imprinted on his winter hat; Mr. Barry obtained the imprinted logo

for his hat from Defendant. Following this conversation, Plaintiff e-mailed Mr. O'Connor for a further explanation and requested the process to obtain a logo on her winter hat. Mr. O'Connor did not provide the process to Plaintiff on how to obtain a winter hat with Defendant's logo. As a result, Plaintiff continued with her employment stationed outside in the freezing cold without a winter hat for at least eight hours per shift.

16. On March 4, 2022, while Plaintiff's January EEOC complaint was pending, Plaintiff received a notice from Mr. O'Connor that her employment was terminated. Defendant's alleged reasons for termination include Plaintiff's failure to treat members of the public and other employees with dignity, failure to perform assigned duties to the best of their ability, incompetence, and disrespect; maltreatment of any person. At all times following the filing of January 26, 2022, EEOC Complaint, Mr. O'Connor and regional supervisor Mr. Piazza were aware of Plaintiff's filing of the EEOC complaint.

17. Plaintiff was terminated from her position as retaliation for filing charges with the Equal Employment Opportunity Commission, in violation of Title VII of the Civil Rights Act of 1964.

18. Following the termination of Plaintiff's employment, on or about March 15, 2022, with the EEOC, Plaintiff filed a charge of retaliation against Defendant.

19. On or about April 12, 2022, Plaintiff received a Notice of Right to Sue from the EEOC, authorizing her to commence this lawsuit.

20. Defendant's unlawful conduct has caused Plaintiff damages, including, but not limited to, lost earnings, lost job opportunities, emotional harm and suffering, reputational harm, costs, and attorney's fees.

## COUNT I – RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT

21. Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated herein.

22. By complaining of discrimination with the EEOC in January 2022, Plaintiff was engaging in a protected activity.

23. Defendant retaliated against Plaintiff including but not limited to when it: created a hostile work environment for Plaintiff because it did not permit Plaintiff to wear her winter hat during her shifts in freezing temperatures in February 2022 and failed to provide the process on how to obtain an employer approved hat, and when Defendant terminated Plaintiff's employment on March 4, 2022, while January 26, 2022 filed EEOC discrimination complaint was pending.

24. Defendant's unlawful conduct violated Title VII of the Civil Rights Act, as amended (42 U.S.C. § 20000e et seq.).

25. Defendant's conduct was willful, malicious, and/or done with reckless indifference to Plaintiff's federally protected rights.

26. Defendant's unlawful conduct caused Plaintiff damages, including, but not limited to, lost earnings, lost job opportunities, emotional harm and suffering, costs, and attorney's fees.

## CONCLUSION AND PRAYER FOR RELIEF

Wherefore, Plaintiff JESSICA L. MOORE prays this Honorable Court to enter judgment in her favor and against Defendant OFFICE OF THE ILLINOIS SECRETARY OF STATE, granting her the following relief:

A. Actual damages;

B. Compensatory damages;

C. Costs;

D. Attorney's fees;

E. Such other relief as the Court deems just and equitable, or to which Plaintiff is entitled as a matter of law.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims.

Respectfully Submitted,

/s/ Umair Malik
_____
By: Umair Malik, Esq. (6304888)
ATTORNEY FOR PLAINTIFF
Malik Law, LLC
4962 N. Milwaukee Ave Suite C-1
Chicago, IL 60630
312-823-4014
um@LawMalik.com