IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSICA L. MOORE, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> OFFICE OF THE ILLINOIS ) <br> SECRETARY OF STATE, ) <br> ) <br> Defendant. ) | Case No. 22 C 3584 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jessica Moore has sued her former employer, the Office of the Illinois Secretary of State (SOS), for discrimination based on her gender. Moore asserts two claims under Title VII of the Civil Rights Act of 1964: retaliation (count 1) and discrimination (count 2). SOS has moved for summary judgment on all of Moore's claims. For the reasons below, the Court grants SOS's motion.

## Background

The following facts are undisputed unless otherwise noted.

**A.  Moore's employment with SOS**

**1.  Training and probationary period**

Moore worked as a security officer with the SOS Department of Police from October 2021 until her termination on March 4, 2022. All new SOS security guards undergo a six-month probationary period that includes classroom and on-the-job training. During this period, security guards receive two formal performance

evaluations, after three and six months of employment. Moore's SOS employment began with one week of classroom training led by Jeff Anders. Following classroom training, SOS assigned Moore to the King Drive location for shadowing and on-the-job training led by security guard Eric Robinson. Throughout Moore's employment, Doug O'Connor, the Assistant Chief of Security, served as her direct supervisor.

Anders and Robinson say that Moore had multiple performance issues during her probationary period. In a November 18, 2021 e-mail[1] to O'Connor, Robinson stated that he had witnessed Moore violating SOS cell phone policies during training. *See* Def.'s L.R. 56.1 Stmt., Ex. 6 at 1. In an e-mail dated February 2, 2022, Anders recounted that Moore frequently took personal phone calls that disrupted her training. Def.'s L.R. 56.1 Stmt., Ex. 15 at 1. Moore disputes Anders's and Robinson's versions of these events. She concedes that at times she used her phone for personal calls during her shift to speak with her son's doctors, Def.'s L.R. 56.1 Stmt., Ex. 2 at 188:21-189:7, but disputes that these calls were frequent or that they disrupted training. Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶¶ 29-30. Robinson confirmed that Moore informed him that she would sometimes need to take personal calls due to her son's medical condition. Def.'s L.R. 56.1 Stmt., Ex. 4 at 36:23-37:16. At the end of her term of classroom training, Moore was held back for an additional two weeks of training.

Moore incurred multiple unexcused absences during her probationary period. In

---

[1] Moore objects to much of SOS's evidence, including e-mails from Moore's coworkers, on hearsay grounds. *See* Pl.'s Mem. in Opp. to Summ. J. at 4. SOS failed to address this argument in its reply brief, but the Court will consider this evidence for the non-hearsay purpose of explaining the effect that complaints from Moore's co-workers had on the relevant decisionmakers. *See Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 575 (7th Cir. 2021).

2

October 2022, she provided a doctor's note with an electronic signature after calling in sick but was later told that a physical signature was required for the absence to be excused. On January 6, 2022, Moore had another unexcused absence. At the time, SOS required employees to notify the Department of Personnel if someone in their household tested positive for COVID. On that day, Moore called Anders to report her absence, but Anders was unable to hear her and asked her to call him back. Moore did not, and she provided documentation weeks later that her absence was due to her daughter testing positive for COVID. She was later referred to the SOS Office of the Inspector General (IG) for failing to comply with SOS's COVID-19 reporting policies.

    O' Connor conducted Moore's three-month performance evaluation on January 26, 2022. For the performance evaluation, employees receive a score from zero to three in eleven categories, with a maximum total score of thirty-three. O'Connor considered information from Moore's co-workers as well as his own experiences with Moore while completing her evaluation. He gave Moore a total score of two out of thirty-three. Specifically, O'Connor gave Moore two points in the "provides friendly, courteous service" category but zero points in the other ten categories. Pl.'s Resp. to Def.'s L.R. 56.1 Stmt., Ex. 1 at 1-3. In the performance evaluation O'Connor stated that Moore "fails to follow many of the policies and procedures set forth by the Secretary of State," "does not effectively perform[] her duties," and "received repeated complaints…for being on her cell phone during working time." *Id.* at 1-2. The performance evaluation also noted Moore's January 6, 2022 absence. *Id.* at 2. O'Connor reported that this was the lowest score he had ever given for an SOS employee evaluation. He forwarded the evaluation to Personnel Liaison Brenda Collier.

3

Upon receiving her employment evaluation, Moore submitted a written response. She provided explanations for her cell phone use, highlighted her positive customer service record, detailed the circumstances leading to her January 6 absence, and outlined multiple disagreements she had had with Anders and Robinson during training. *Id.* at 3-5.

### 2.     Complaints

On February 7, 2022, Moore filed complaints with the SOS IG and the Equal Employment Opportunity Commission (EEOC).  In her IG complaint she alleged that Robinson had created a "hostile work environment" and had been "disrespectful, unprofessional and rude as a shift leader."  Pl.'s Resp. to Def.'s L.R. 56.1 Stmt., Ex. 2 at 1.  She asked SOS to issue her a new performance evaluation and conduct an investigation into Robinson and Anders.  *Id*. at 2.  In her EEOC complaint Moore alleged that during her employment she had been "subjected to harassment."  Def.'s L.R. 56.1 Stmt., Ex. 22.  She also stated her belief that she had been discriminated against based on her race and sex.  *Id*.

### 3.     Termination

Collier solicited feedback from Moore's coworkers to evaluate the accuracy of O'Connor's performance evaluation.  Collier received emails from at least three of Moore's colleagues alleging that she failed to respond to radio calls, was not properly performing her security duties, and had received a complaint from a customer for inappropriate behavior.  *See* Def.'s L.R. 56.1 Stmt., Ex. 17 at 1; Ex. 18; Ex. 19 at 2-3.  Based on the evaluation and the information she received from Moore's colleagues, Collier sent a recommendation to discharge Moore to Assistant Director of Personnel

Lindsay Richmond. O'Connor likewise recommended Moore's discharge. Richmond drafted written charges for Moore's termination. Director of Personnel Stephan Roth reviewed Richmond's written charges and made the decision to terminate Moore. SOS presented Moore with her termination letter on March 4, 2022. The justifications for the discharge provided on the termination letter included Moore's alleged "disrespectful behavior," "difficult[y] to locate," and "use [of] her cell phone when she is not on breaks or lunch." Def.'s L.R. 56.1 Stmt., Ex. 25 at 2. The discharge request also cited "not following Secretary of State Policies and procedures" as a reason for her termination. *Id.* at 3.

In March 2022, following her termination, Moore filed an additional gender discrimination and harassment charge with the EEOC. The EEOC later issued Moore a Notice of Right to Sue. Moore then filed the present lawsuit.

## Discussion

Summary judgment is appropriate if the defendant demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only if "sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook Cnty. Sheriff's Dep't.*, 602 F.3d 845, 849 (7th Cir. 2010) (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008)). On a claim of employment discrimination, the court must ask whether "the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). When considering a motion for summary judgment, the Court views the

5

facts in the light most favorable to the nonmoving party. *Logan v. City of Chicago*, 4 F. 4th 529, 536 (7th Cir. 2021).

A.  **Gender discrimination claim**

The Seventh Circuit's Title VII caselaw previously distinguished between "direct" and "indirect" methods of proving intentional discrimination. In *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016), the Seventh Circuit concluded that rather than separating evidence into different categories, relevant evidence must be considered "as a whole" to determine if a reasonable jury could conclude that discrimination motivated the adverse employment action. *Id.* at 764–66. Additionally, although the *McDonnell Douglas* test remains an acceptable means of "organizing, presenting, and assessing circumstantial evidence" in a discrimination case, "*McDonnell Douglas* is not the only way to assess circumstantial evidence of discrimination." *David*, 846 F.3d at 224.

The parties dispute which standard of review this Court should apply to Moore's gender discrimination claims. SOS argues that the Court should grant its summary judgment motion because Moore has not met her burden of establishing a *prima facie* case of discrimination under the *McDonnell Douglas* burden-shifting test. Moore correctly asserts that she is not required to satisfy the *McDonnell Douglas* standard to defeat a summary judgment motion but argues that she has provided sufficient evidence via the outdated direct method of proof standard. Because neither party utilized the correct standard, the Court therefore analyzes Moore's claims under both *McDonnell Douglas* and *Ortiz*.

1. *Prima facie* case standard

To survive summary judgment under the *McDonnell Douglas* test, the plaintiff must establish a *prima facie* case of discrimination by showing that "(1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of her protected class were treated more favorably." *Greene v. Potter*, 557 F.3d 765, 768 (7th Cir. 2009) (quoting *Goodwin v. Bd. of Trs. of the Univ. of Ill.*, 442 F.3d 611, 617 (7th Cir. 2006)). If the plaintiff satisfies all four elements of this test, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Greene*, 557 F.3d at 768 (internal quotation omitted). If the defendant meets that burden, the plaintiff must prove that the employer's reason is "merely pretext for unlawful discrimination." *Id*. (quoting *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004)).

As a female, Moore is clearly a member of a protected class, and her termination constitutes an adverse employment action. SOS argues that Moore was not meeting its legitimate expectations at the time of her termination and that she cannot identify a similarly situated comparator.

a. **Employer's legitimate expectations**

It is undisputed that Moore received multiple reprimands for job performance deficiencies during her employment with SOS. Throughout her probationary period Moore accrued multiple absences that were considered unexcused due to deficient doctor's notes, even after Collier informed her that her notes did not conform to SOS's absence policies. Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 27. And at one point, Moore

7

was the subject of an SOS IG investigation due to her failure to comply with her employer's COVID-19 reporting procedures. *Id.* ¶ 38. In February 2022, a location manager informed Moore that she had received a customer complaint. *Id.* ¶ 34. Moore's colleagues also reported that she was given multiple reminders about SOS policies about taking personal calls while on shift. *See id.* ¶¶ 29-30.

Federal courts intervene in personnel management decisions only when "an employer's reason for [an adverse action] is without factual basis or is completely unreasonable." *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 698 (7th Cir. 2017) (citing *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 646 (7th Cir. 2013). Moore does not dispute the factual basis for many of the claims included in her performance evaluation and written termination charges. Instead, she challenges how Robinson, O'Connor and other SOS employees characterized her actions and their refusal to accept her justifications for violating various SOS policies. For example, Moore does not dispute that she failed to comply with SOS's COVID-19 reporting policies. Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 38. Rather, she maintains that her failure to follow the policy was due to a lapse in memory, not intentional misconduct. Def.'s L.R. 56.1 Stmt., Ex. 2 at 135:22-136:15. Similarly, Moore admitted during her deposition that she did at times take personal calls while on shift, *id.* at 155:23-156:13, though she says these calls were from her son's medical providers. *Id.* at 157:13-158:3. In other words, Moore does not deny her violations of SOS policy; rather she attempts to justify them. That is insufficient to create a genuine dispute regarding whether her performance met SOS's legitimate expectations.

The only other evidence Moore provides that could support an argument that she

8

was meeting SOS's legitimate expectations is her contention that she received "praise from customers." Pl.'s Mem. in Opp. to Summ. J. at 10. However, Moore's customer service record at SOS is mixed at best. The evidence reflects that a customer complained to King Drive manager Keith Crotty after Moore "loudly asked if she or her son was disabled when they approached the building." Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 34. When asked about this incident, Moore "claimed she did nothing wrong." *Id.* But Moore's performance must be evaluated "through the eyes of her supervisors." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). Though Moore may contend that the standards SOS imposed on security officers were too strict, the question for this Court is not whether SOS should have bent its rules to accommodate her. *See Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 464 (7th Cir. 2014) ("For summary judgment purposes, [plaintiff] cannot create a factual dispute by stating that his job responsibilities ought to have been something other than what the company expected."). Rather, the relevant inquiry is whether Moore was adhering to SOS's expectations for an employee in her position. Moore has not provided sufficient evidence from which a reasonable jury could find that she was meeting her employer's legitimate expectations at the time of her termination.

          **b.**     **Similarly situated comparator**

Robinson held back two male security guards for additional training in the past, but unlike Moore, neither was terminated during their probationary period. Def.'s Resp. to Pl.'s L.R. 56.1 Stmt. ¶ 24. In cases where a plaintiff claims that she was disciplined more harshly than her comparators, to determine whether the comparison is appropriate, the relevant similarities are "those between the employees' alleged

9

misconduct, performance standards, and disciplining supervisor." *Reives v. Ill. State Police*, 29 F.4th 887, 892 (7th Cir. 2022). Moore has not provided any information about the other male guards' conduct during training, the results of their performance evaluations, or whether they were punished more leniently for violating the same rules that SOS claimed Moore violated. In short, Moore has not provided evidence that would permit a reasonable jury to find that these guards are appropriate comparators.

Because Moore cannot satisfy the second or fourth elements, she has not made out a *prima facie* case of discrimination under the *McDonnell Douglas* framework. The Court therefore proceeds to evaluate whether, using the *Ortiz* framework, the cumulative admissible evidence would permit a reasonable factfinder to conclude that Moore's termination was based on her gender.

### 2. Cumulative evidence standard

Under *Ortiz*, the key question is whether there is sufficient evidence for a reasonable juror to conclude the plaintiff would not have been subject to the adverse employment action if she did not have the protected characteristic. *Ortiz*, 834 F.3d at 764. "In order to make out a case of sex discrimination without resorting to *McDonnell Douglas*, a plaintiff must provide either direct or circumstantial evidence that supports an inference of intentional discrimination." *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020) (quoting *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 563 (7th Cir. 2009)). Examples of circumstantial evidence include "ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll*, 953 F.3d at 929.

Moore primarily relies on anecdotal evidence that she contends shows SOS applied its polices to her differently from the way it applied them to male colleagues. But she produces no evidence that would permit a reasonable jury to find that these inconsistencies were due to her gender. For example, Moore asserts that although Robinson and O'Connor failed to provide her with instructions about how to obtain approval for her winter hat, they "provided male employees with the process to obtain approval." Pl.'s Mem. in Opp. to Summ. J. at 8. Moore distinguishes herself from any possible comparators, however: she testified she wore a "ski mask type of hat" but that none of the other security officers wore a ski mask. Def.'s L.R. 56.1 Stmt., Ex. 2 at 155:4-155:15. In short, Moore has not provided evidence that the male security guard she claims wore a non-SOS issued hat while on duty was wearing a hat similar to hers that required O'Connor's approval. Similarly, Moore references a conversation where Robinson "scolded [her] in front of other employees on October 28, 2021." Pl.'s Mem. in Opp. to Summ. J. at 8. Robinson stated in his deposition that he typically didn't discuss performance issues in front of other employees. Def.'s L.R. 56.1 Stmt., Ex. 4 at 46:23-47:18. But Moore has not provided evidence regarding any male employees who were afforded privacy for oral reprimands, nor has she presented evidence suggesting that public admonishments were reserved for female employees. Even viewed in the light most favorable to Moore, this evidence does not support a reasonable inference that SOS differentially applied its policies to her because she is female.

Moore also notes that all of her SOS supervisors were male, and she insists that the employment of an all-male guard staff at the South Chicago location is evidence of gender bias. Pl.'s Mem. in Opp. to Summ. J. at 8. But this does not advance Moore's

11

claim in this case. She has not asserted a claim of discriminatory hiring; her lawsuit concerns discipline and termination.

It may be true that Robinson and O'Connor held personal animus towards Moore and that at times she faced unprofessional or rude behavior from her male colleagues. But although Moore may believe this conduct was gender-based, "speculation is no substitute for evidence at the summary judgment stage." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014). Even viewed in the light most favorable to Moore, she has not produced evidence from which a jury reasonably could infer that her gender motivated her termination.

For these reasons, SOS is entitled to summary judgment on Moore's claim of discriminatory treatment.

**B.     Retaliation claim**

Moore also alleges that SOS retaliated against her because of her EEOC and IG complaints. To survive summary judgment on a retaliation claim, a plaintiff must offer evidence of: "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018). On the last point, a plaintiff must show that her employer would not have taken the adverse action "but for" the protected activity. *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015). "Federal law protects an employee only from retaliation that produces an injury." *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009).

   **1.     Protected activity**

No party disputes that Moore engaged in protected activity when she filed an

12

EEOC complaint in February 2022. *See Greengrass*, 776 F.3d at 485 (7th Cir. 2015). However, the hostile work environment complaint Moore filed with SOS's IG Office was not protected under the Title VII retaliation prohibition. Title VII protects a worker only from retaliation based on complaints that "arose from harassment [or discrimination] based on a protected factor." *Northington v. H & M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013). In her IG complaint, Moore accused Robinson of being "disrespectful, unprofessional, and rude," but she did not attribute any of his behavior to her gender, race, or any other protected characteristic. Pl.'s Resp. to Def.'s L.R. 56.1 Stmt., Ex. 2 at 1. The complaint was also labeled as a "Departmental/Personnel Issue" rather than as a discrimination or harassment complaint. *Id.* at 1-2. In short, only Moore's EEOC complaint counts as protected activity for purposes of her Title VII retaliation claim.

### 2.   Materially adverse action

An employment action is materially adverse only if it would dissuade a reasonable employee from engaging in the protected activity. *Koty v. DuPage Cnty.*, 900 F.3d 515, 520 (7th Cir. 2018); *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007). The standard for establishing that an action is materially adverse under Title VII is less onerous for retaliation claims than it is for discrimination claims. *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 912 (7th Cir. 2022). Still, "an adverse action in the Title VII retaliation context must produce a material injury or harm." *Lewis v. Wilkie*, 909 F.3d 858, 870 (7th Cir. 2018).

Many of the incidents cited in Moore's retaliation claim do not qualify as materially adverse. Moore alleges that after filing her EEOC complaint, Robinson and O'Connor retaliated against her by refusing to let her wear her winter hat while working

13

outside and failing to provide information about the process to obtain approval for her hat. No reasonable jury could find that these actions produced a material injury or harm to Moore. Among other things, Moore was not formally disciplined or reprimanded for wearing her hat. Moore notes that she worked outside without her hat amid "freezing temperatures," Pl.'s Mem. in Opp. to Summ. J. at 12, but she concedes that she was not ordered to work outside but rather chose to spend time outdoors to avoid interacting with Robinson. Def.'s L.R. 56.1 Stmt., Ex. 2 at 166:16-167:15. The Court concludes that no reasonable jury could find that Moore's inability to wear her winter hat impacted her employment status in a way that was significant enough that it would dissuade a reasonable employee from filing a discrimination complaint in the future.

Moore also contends that she was subjected to "heightened scrutiny" following her EEOC complaint. Pl.'s Mem. in Opp. to Summ. J. at 12. There are certainly situations in which "excessive monitoring" by an employer can qualify as a materially adverse action. *Trimble v. All.-DeKalb/Rock-Tenn Co.*, 801 F. Supp. 2d 764, 776 (N.D. Ill. 2011). However, the plaintiff must offer evidence demonstrating how the additional monitoring caused injury or harm. *Lewis*, 909 F.3d at 869 (ruling that knowledge of supervisors' location monitoring would not deter a reasonable employee from pursuing protected activity). Moore has not really explained what she means by "excessive monitoring" and certainly has not pointed to any evidence that would permit a finding of any materially adverse activity on SOS's part.

Both parties agree that Moore's termination was a materially adverse employment action. Thus Moore can defeat summary judgment on her retaliation claim only if a reasonable jury could find that her EEOC complaint was the but-for cause of

14

her termination.

### 3. Causal connection

To assess the existence of a causal connection for purposes of a retaliation claim, "[t]he key question is whether a reasonable juror could conclude that there was a causal link between the protected activity or status and the adverse action." *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019) (citing *Ortiz*, 834 F.3d at 765–66). The burden is on the plaintiff to produce evidence that the decisionmaker had actual knowledge of the protected activity at the time of the challenged retaliatory action. *Eaton v. J.H. Findorff & Son, Inc.*, 1 F.4th 508, 512 (7th Cir. 2021). It is not sufficient for a plaintiff to claim simply that the decisionmaker could have or should have known about the complaint. *Id.* at 513.

Moore contends that "per Mr. Robinson, Mr. O'Connor was aware of the Inspector General Complaint in February 2022." Pl.'s Mem. in Opp. to Summ. J. at 12. As explained above, however, Moore's IG complaint was not protected activity. That aside, the evidence in the record does not support Moore's contention. Robinson says that at some point O'Connor informed him over the phone that Moore had filed a "hostile work environment" complaint against him. Def.'s L.R. 56.1 Stmt., Ex. 4 at 50:10-51:5. After first stating that he did not know whether this call took place while Moore was employed at SOS, *id.* at 90:18-25, Robinson later asserted that it took place a month after her termination. *Id.* at 91:9-15. O'Connor says he received an e-mail about Moore's discrimination complaint only after her termination. Def.'s L.R. 56.1 Stmt., Ex. 3 at 60:1-12.

This evidence is insufficient to permit a reasonable jury to find that the

15

decisionmaker(s) had knowledge of Moore's protected activity at the time of the challenged decision. First, both Robinson and O'Connor ultimately testified that they did not learn of Moore's complaints until after her termination. Second, because Robinson refers to the complaint as a "hostile work environment" complaint, it is hard to say that he is referencing Moore's EEOC complaint. Third, O'Connor and Robinson are not the relevant decisionmakers for evaluating whether Moore's termination was retaliatory. It is undisputed that Collier provided a termination recommendation to Richmond; Richmond developed written charges supporting termination; and Roth made the ultimate decision to terminate Moore. Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶¶ 16-18. Roth submitted a declaration stating that he did not know that Moore had filed an EEOC complaint at the time he made the decision to fire her. Def.'s L.R. 56.1 Stmt., Ex. 24.

Moore offers no evidence that would permit a reasonable jury to find otherwise— or, for that matter, that either Collier or Richmond was aware of her EEOC complaint at the relevant times. Rather, Moore simply objects to Roth's declaration as "self-serving." Pl.'s Mem. in Opp. to Summ. J. at 4. The Seventh Circuit has repeatedly held that otherwise admissible evidence cannot be disregarded at the summary judgment stage on the ground that it is "self-serving." See *Navejar v. Iyiola*, 718 F.3d 692, 697 (7th Cir. 2013) (ruling that district court committed reversible error by disregarding nonmovant's "self-serving" evidence when considering summary judgment motion); *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 175 (7th Cir. 2011) ("[E]vidence presented in a 'self-serving' affidavit or deposition is enough to thwart a summary judgment motion."). Moore does not contend that Roth's declaration was not based on personal knowledge or that his testimony on this point would be inadmissible at trial. In sum, on the record before the

Court, no reasonable jury could find that Roth or any other decisionmaker knew that she engaged in protected activity at the relevant time.

Because Moore has no direct evidence of causation, she must rely on circumstantial evidence, such as "suspicious timing, ambiguous statements, treatment of similarly-situated employees, and any other relevant information that could permit an inference of retaliation." *Burton*, 851 F.3d at 697. Moore points to the "proximity in time" between her February 7 complaint and her March 4 termination to prove causation. Pl.'s Mem. in Opp. to Summ. J. at 12. But in most situations, "suspicious timing alone is not enough to establish a causal connection between the adverse action and the protected activity." *Abebe v. Health & Hosp. Corp. of Marion Cnty.*, 35 F.4th 601, 608 (7th Cir. 2022). In this situation, the interval is close to a month, and Moore cites no case indicating that's close enough, without more, to permit an inference of causation. Moore also says that other employees were "held back for training without termination," but she offers no specific evidence of a similarly situated employee who did not submit an EEOC complaint but was treated more favorably. Pl.'s Mem. in Opp. to Summ. J. at 12.

As indicated earlier, Moore also contends that SOS retaliated against her by refusing to let her wear her winter hat and subjecting her to "heightened scrutiny." Pl.'s Mem. in Opp. to Summ. J. at 12. Even if these circumstances could be found to constitute materially adverse actions, Moore has not offered evidence from which a reasonable jury could find a causal connection between these actions and her EEOC complaint. Moore has offered no information regarding the nature of the "scrutiny" she received, how soon after her EEOC complaint it began, or how it compared to

17

monitoring experienced by other employees. Regarding Moore's winter hat, O'Connor says that he was "notified" that Moore was wearing a hat while on duty, observed Moore wearing the hat, and then directed Robinson to tell her that it was not permitted. Def.'s L.R. 56.1 Stmt., Ex. 3 at 113:6-114:14. On February 24, 2022, Moore e-mailed O'Connor about her hat, and O'Connor replied that hats cannot be worn unless they are issued or approved by SOS. *See* Pl.'s Resp. to Def.'s L.R. 56.1 Stmt., Ex. 3. Again, Moore has provided no case cite indicating that the two-week interval between her complaint and O'Connor's e-mail is short enough to support an inference of retaliatory conduct standing alone. In addition, nothing in the record suggests the existence of an SOS employee that was permitted to wear a "ski mask type of hat" while on duty. *See* Def.'s L.R. 56.1 Stmt., Ex. 2 at 155:4-155:15. No reasonable juror could find that O'Connor's enforcement of SOS's pre-existing dress code policy was caused by Moore's EEOC complaint.

      For these reasons, SOS is entitled to summary judgment on Moore's retaliation claim.

## Conclusion

      For the reasons stated above, the Court grants defendant's motion for summary judgment [dkt. no. 54] and directs the Clerk to enter judgment in favor of defendant and against plaintiff. The trial date of November 6, 2023 is vacated.

Date: October 4, 2023

                                                          _____
                                                            MATTHEW F. KENNELLY
                                                            United States District Judge